IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

|  |  |  |
|---|---|---|
| CHRISTIAN J. LESSARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:14-cv-63 |
| | ) | |
| CONTINENTAL CASUALTY CO., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant Continental Casualty Company's ("Defendant") Motion for Summary Judgment.

Defendant issued a directors and officers liability insurance policy to Lessard Group, Inc. and certain other companies ("Lessard Companies") in which Plaintiff Christian J. Lessard ("Lessard" or "Plaintiff") was involved. The policy binds Defendant to pay all "Loss" resulting from any "Claim" made against any "Insured Person" during the "Policy Period" for a "Wrongful Act." The policy applies only to any Claim first made during the February 2, 2011 to February 2, 2012 Policy Period. Plaintiff seeks a judgment against Defendant for refusing to defend and indemnify him in connection with a lawsuit brought by Wells Fargo Bank, N.A. ("Wells Fargo" or the

"bank") on August 12, 2011 in the Circuit Court of Fairfax County, Virginia against him and other alleged Insureds. Defendant's Motion here claims that the policy's language unambiguously relieves it from such coverage and accordingly entitles it to judgment as a matter of law.

Wells Fargo began issuing loans to the Lessard Companies in 2003. The Lessard Companies gave Wells Fargo a security interest in the corporations' property to secure the loans. Wells Fargo also entered into a loan with related company Metropolitan Development, LLC ("Met Dev"), which was secured by security agreements from Lessard and others.

Thereafter, the Lessard Companies and Met Dev defaulted under the loan documents. On September 21, 2010, the Lessard Companies confessed judgment in favor of Wells Fargo in the amount of $5,058,866.93, plus interest and costs, including attorney's fees and collection fees. Met Dev confessed judgment in excess of $12 million that same day. Wells Fargo alleges that, after it obtained the confessed judgments, the debtors and certain officers, including Lessard, engaged in an intentional scheme of invalid, fraudulent, and voluntary transfers of assets to avoid the debt obligations. Wells Fargo's attempts to collect on the defaulted loans continued past the filing of its lawsuit on August 12, 2011, where it claims that Lessard and

other defendants – among other things – engaged in fraudulent conveyance to avoid their debts to Wells Fargo.

On February 1, 2011, before purchasing the policy with Defendant, Plaintiff reported the dispute concerning Wells Fargo's loan collection efforts to its then-insurance-carrier, Travelers Casualty and Surety Company of America ("Travelers"). Meanwhile, counsel for Wells Fargo and Lessard continued to exchange settlement demands and offers throughout the spring of 2011. Wells Fargo eventually accepted a lump sum settlement of $5,925,000, plus $391,755.78 from an earlier garnishment proceeding. The settlement resolved all of Wells Fargo's Claims against Lessard, the Lessard Companies, and Met Dev, and the President of Lessard Companies and a Met Dev principal, Carlos Vazquez. Travelers ultimately agreed to defend the Claim and settled all Claims for defense costs and indemnity under its policy by contributing $600,000 toward the settlement between Lessard and his companies and Wells Fargo.

Plaintiff first gave notice of the Claim to Defendant by letter dated January 24, 2012, and Plaintiff's defense counsel had already generated $475,496.00 in fees and expenses by the time Defendant received Plaintiff's Claim on January 26, 2012.

Plaintiff seeks recovery under the policy with Defendant for both amounts paid in settlement to Wells Fargo and defense costs incurred with Wells Fargo's collection action. Plaintiff

filed this action in the Circuit Court of Fairfax County, Virginia in December 2013 and the Defendant removed the action to this Court in January 2014. Defendant now moves here for summary judgment pursuant to Fed. R. Civ. P. 56.

Summary judgment is appropriate if the pleadings and evidence before the Court show no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The interpretation and construction of insurance policies is a matter of law, and therefore, such cases are particularly amenable to summary judgment." John Deere Ins. Co. v. Shamrock Indus. Inc., 929 F.2d 413, 417 (8th Cir. 1991). Here, the instant policy was issued to a Virginia insured and Virginia law accordingly applies to interpret it. See Dreher v. Budget Rent-A-Car Sys., Inc., 272 Va. 390, 395 (Va. 2006). Interpreting insurance policies, "like other contracts," is done "in accordance with the intention of the parties gleaned from the words they have used in the document." See Transcon. Ins. Co. v. RBMW, Inc., 262 Va. 502, 512 (2001) (quoting Floyd v. N. Neck Ins. Co., 245 Va. 153, 158 (1993)); see also Nat'l Hous. Bldg. Corp. v. Acordia of Va. Ins. Agency, Inc., 267 Va. 247, 251 (2004) ("It is not [a court's] function to make a new contract for the parties different from that plainly intended

and thus create a liability not assumed by the insurer.")
(internal quotations and citations omitted).

Defendant puts forth five arguments in favor of summary
judgment based on the policy's language: (1) the policy affords
coverage only for Claims first made during the Policy Period,
and Wells Fargo's Claim against Plaintiff was made before the
policy period; (2) the policy's coverage exclusion for any
matter that was the subject of notice to a prior insurer
squarely applies given Plaintiff's prior notice to Travelers of
the Wells Fargo dispute; (3) Plaintiff does not seek amounts
that qualify as a "Loss" within the policy's meaning; (4) even
if the Claim were made within the Policy Period, it is untimely
under the policy's provisions; and (5) the policy prohibited the
Plaintiff's precise conduct: a settlement offer tendered before
the Defendant's consent, forfeiting Plaintiff's right to
recovery.

Turning to Defendant's first argument, a review of the
policy's Declarations, General Terms & Conditions reveals its
applicability only to Claims first made during the February 2,
2011 to February 2, 2012 Policy Period. For purposes of the
policy's directors and officers liability coverage, a Claim
includes a written demand for monetary damages or non-monetary
relief against any Insured Person alleging a Wrongful Act. As
only Claims that are first made during the Policy Period are

coverable, the timing of Wells Fargo's Claim against Plaintiff is crucial.

The facts reveal that Wells Fargo's Claim was first made prior to the Policy Period. Lessard Companies defaulted under the relevant loans in 2010 and Wells Fargo had made written demands to Lessard to pay the amounts owed and resolve any dispute regarding the confessed judgments no later than January 2011; a fact evinced by the January 13, 2011 settlement letter between Wells Fargo and the Lessard Companies. Even before buying Defendant's insurance policy, let alone notifying Defendant of the Claim, Lessard provided notice of its dispute with Wells Fargo to Travelers in an attempt for it to cover the bank's Claim.

The Plaintiff contends that a genuine dispute of material fact nevertheless remains here because Wells Fargo only made written demands to Plaintiff's companies, but not to Plaintiff personally, prior to the bank's August 12, 2011 lawsuit. This argument fails. The policy states that a Claim is deemed made "in the case of a written demand for monetary damages or non-monetary relief, on the Named Company Insureds' receipt of such written demand." The "Named Company Insureds" include "the Named Company, any Subsidiary, Plans and Insured Persons covered under any Coverage Part." Here, the "Named Company" includes the various Lessard Companies. It is undisputed that Wells

Fargo made a written demand on multiple Lessard Companies to pay amounts owed under the loan documents and these demands were made prior to the Policy Period's inception.  Accordingly, whether Plaintiff personally received a written demand is immaterial to determining whether the Claim was made within the Policy Period.

Plaintiff also fails to find a genuine dispute of material fact in attempting to characterize the pre-lawsuit demands by Wells Fargo against the Lessard Companies as a separate Claim from the later-filed lawsuit that included Plaintiff.  Even if the two matters were separate Claims, the policy would require treating them as a single Claim for coverage purposes.  The policy states that:

> More than one Claim involving the same Wrongful Act or Interrelated Wrongful Acts shall be considered as one Claim which shall be deemed made on the earlier of:
>
> (a) the date on which the earliest such Claim was first made, or
>
> (b) the first date valid notice was given by the Named Company Insureds to the Insurer under this Policy of any Wrongful Act or under any prior policy of any Wrongful Act or any fact, circumstance, situation, event or transaction which underlies any such Claim.

Moreover, the policy also provides a broad definition of "Interrelated Wrongful Acts," including "any Wrongful Acts which

are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event." The policy's language unambiguously covers the facts here.

It is undisputed that the Wells Fargo August 2011 lawsuit involves the same or Interrelated Wrongful Acts as the bank's pre-lawsuit demands. The Complaint itself is clearly a function of Wells Fargo failing to resolve the collections dispute regarding the confessed judgments, and it alleges claims arising out of that failure. Plaintiff was personally named in the suit in an attempt to collect funds owed by the Lessard Companies that, Wells Fargo alleges, were improperly conveyed to him. The policy's language unambiguously compels treating Wells Fargo's demands as a related - and deemed single - Claim first made when the earliest Claim was made. Accordingly, the Court finds that the Claim was made prior to the Policy Period and the policy does not afford coverage.

Defendant's second argument for summary judgment rests on the policy's "Prior Notice Exclusion." This provision excludes coverage for a "Loss" that involves a "Wrongful Act" that is the subject of any notice under any prior policy for which the policy is a whole or partial renewal or replacement. Defendant asserts that Plaintiff's Claim is the subject of notice given under the prior Travelers policy and now Plaintiff is attempting to have Defendant's policy serve as a renewal or replacement for

the Travelers policy – resulting in the Prior Notice Exclusion barring the Claim.

Plaintiff finds no dispute over the Prior Notice Exclusion's applicability. Plaintiff does not dispute that the Claim for which he seeks coverage involves the same facts and circumstances as were at issue in the notice given under the Travelers policy. Rather, Plaintiff only asserts that there is a genuine dispute over whether the policy with Defendant is actually a renewal or replacement of the Travelers policy. Yet Plaintiff's argument is belied by the application for Defendant's policy, where the Insureds themselves list the Travelers policy as the expiring coverage. Such evidence fails to support a genuine dispute of material fact under Fed. R. Civ. P. 56.

Defendant's third argument for summary judgment asserts that the loan amounts that Wells Fargo sought to recover from Plaintiff and his companies are not "Loss" under the policy. Plaintiff concedes that Wells Fargo's efforts to collect the confessed judgment amounts are not a covered Loss. He argues instead that he personally incurred "Loss" when Wells Fargo alleged fraudulent conveyance Claims and other counts against him in the lawsuit, which he contends were "different wrongs" than those Wells Fargo pursued against the Lessard Companies.

Plaintiff's response finds no dispute in the facts because his response merely re-attempts to treat Wells Fargo's pre-and-post-lawsuit Claims distinctly.  Any liability on the part of Lessard stems directly from the contractual liability of the Lessard Companies and their pre-existing judicial obligation to Wells Fargo.  The fact that Wells Fargo may be able to collect those very same amounts from Lessard individually based on his alleged actions in transferring assets to avoid the debts does not change the nature of what is to be paid, which are the debts owed and do not constitute "Loss."  What is more, "Loss" under the policy precludes defense costs in an uncovered Claim – preventing Lessard's incurred attorney's fees and costs in the matter from being characterized as "Loss."  Accordingly, there is no genuine dispute.

Defendant's fourth argument contends that the policy's provision requiring that the insureds give notice of their Claim to the insurer "as soon as practicable" precludes its coverage even if the Plaintiff's Claim fell within the Policy Period. This argument relies upon Virginia's longstanding "rule that if the insured fails to fulfill a condition of an insurance policy, the insurer's coverage obligation is not triggered."  See Bryan Bros., Inc. v. Cont'l Cas. Co., 660 F.3d 827, 830 (4th Cir. 2011).  As notice provisions within an insurance policy "give the insurer an opportunity to make a timely investigation of all

the circumstances and to prepare an adequate defense, if necessary, on behalf of the insured," they "must be complied with by the insured." See North River Ins. Co. v. Gourdine, 205 Va. 57, 61-62 (1964).

While "the question whether notice of [a Claim] has been given to the insurer 'as soon as practicable' is [generally] one for the fact-finder to determine," see State Farm Mut. Auto. Ins. Co. v. Porter, 221 Va. 592, 597 (1980), it "may be decided as a matter of law where reasonable men could not differ as to the inferences to be drawn from the undisputed facts," see Atlas Ins. Co. v. Chapman, 888 F. Supp. 742, 745 (E.D. Va. 1995); see also North River, 205 Va. at 62. Here, Plaintiff gave notice of the dispute underlying his insurance Claim to Defendant to his prior carrier, Travelers, on February 1, 2011, and Wells Fargo filed its lawsuit in August 2011. Defendant received notice from the Plaintiff on January 24, 2012 - nearly a year from the date Plaintiff notified Travelers and nearly five months from the commencement of Wells Fargo's suit. Since it was unaware of the Claim, Defendant had no say in how Plaintiff was handling the defense or the fees incurred from it, exceeding $475,000 in defense costs before Defendant was notified. The undisputed length of time between Plaintiff being on notice of the Claim and Plaintiff notifying Defendant contravenes the basis for the policy's "as soon as practicable" provision, cf. North River,

205 Va. at 61-62. Moreover, Plaintiff's conclusory excuse for late notice – his belief that the Wells Fargo lawsuit lacked merit – does not evince a genuine dispute of material fact over whether notice was made as soon as practicable. Cf. Liberty Mut. Ins. Co. v. Safeco Ins. Co., 223 Va. 317, 324 (1982) (holding that a 51-day delay in notifying the insurer was not "as soon as practicable" because there was no evidence that the insured "was prevented by reason of health, or other circumstance, from personally notifying [the insurer] seasonably, or from having someone notify the company for him promptly.").

Finally, Defendant argues that it is indisputably free from covering Plaintiff's Claim because of Plaintiff's failure to secure Defendant's prior consent to the settlement negotiations with Wells Fargo. The policy contains a "Cooperation Clause" that prohibits the insured from making any settlement offer without the insurer's prior written consent. Plaintiff contends that this Clause raises a genuine dispute of material fact because of its ambiguities, which should be construed against the drafter and in favor of coverage. Yet the Clause is unambiguous:

> The Named Company Insureds shall not admit liability, consent to any judgment, agree to any settlement or make any settlement offer without the Insurer's prior written consent, such consent not unreasonably withheld. The

> Insurer shall not be liable for any Loss to
> which it has not consented.  The Named
> Company Insureds agree that they shall not
> knowingly take any action which increases
> the Insurer's exposure for Loss under this
> Policy.

Also incontrovertible is the fact that Plaintiff engaged in
settlement negotiations with Wells Fargo before giving notice to
Defendant.  These two facts together preclude coverage, and the
Court may not strain to find ambiguity within the policy's plain
language so as to conclude otherwise.  See Salzi v. Va. Farm
Bureau Mut. Ins. Co., 263 Va. 52, 55 (2002) ("[A]n ambiguity, if
one exists, must be found on the face of the policy.") (internal
quotations and citation omitted).

   "Cooperation with the insurer is one of the conditions of
the policy. When the condition was broken, the policy was at an
end, if the insurer so elected." Grady v. State Farm Mut. Auto.
Ins. Co., 264 F.2d 519, 522 (4th Cir. 1959) (internal quotation
and citation omitted).  This policy's Cooperation Clause
unambiguously bars coverage in the type of factual circumstance
presented here:  where Plaintiff admittedly made settlement
offers without the Defendant's prior written consent.
Plaintiff's attempts to craft ambiguity where none exist belie
the Clause's plain language and would obviate any need for
prior, written consent to settle a Claim.  Rather, Plaintiff's
conduct forfeited whatever coverage he may have had under his

policy with Defendant. Accordingly, the Court finds that there is no genuine issue of material fact as to the policy's Cooperation Clause.

An appropriate Order shall issue.

_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
August 19, 2014